JUDGE PAULEY

14 CV 0817

Kim J. Landsman
Ana-Claudia Roderick
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022-7020
(212) 907-7300
E-mail: klandsman@golenbock.com

*Attorneys for Plaintiff Sony Music Entertainment*

RECEIVED FEB 10 2014 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x

SONY MUSIC ENTERTAINMENT,

              Plaintiff,

- against -

EXTREME TRAXX PRODUCTIONS,
CHEER MUSIC STORE INC., CHEER MUSIC
MACHINE, LLC, CHEERLEADING MUSIC,
LLC, THOMAS LOCKLAYER, and MARK
BRYAN,

              Defendants.

------------------------------------------------ x

14 Civ. _____

**COMPLAINT**

**ECF Case**

**Jury Trial Demanded**

      Plaintiff Sony Music Entertainment ("Plaintiff" or "Sony Music"), through its undersigned counsel, for its complaint against defendants Extreme Traxx Productions, Cheer Music Store Inc., Cheer Music Machine, LLC, Cheerleading Music Service, LLC, Thomas Locklayer, and Mark Bryan (collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

      1.    This is an action for the blatant, willful, and ongoing infringement of Sony Music's copyrights in and to certain sound recordings. Defendants sell, distribute, and commercially exploit customized "mixes" of popular sound recordings for use in cheerleading

1

competitions that include Sony Music's copyrighted sound recordings without any attempt to obtain the requisite permission.

## PARTIES

2. Plaintiff Sony Music is a partnership duly organized and existing under the laws of the State of Delaware, with its principal place of business at 550 Madison Avenue, New York, New York 10022. Sony Music markets, sells, distributes, and otherwise exploits sound recordings embodying musical and/or vocal performances by recording artists, including in the form of phonograph records, tapes, compact discs ("CDs"), videos, digital video discs ("DVDs"), and downloads from the Internet.

3. Upon information and belief, defendant Extreme TRAXX Productions ("Extreme TRAXX") is a business entity with its principal place of business in Williamstown, New Jersey. Extreme TRAXX operates and conducts business through its interactive website http://www.extremetraxx.com, and is engaged in streaming, offering for sale, distributing, and selling samples and remixes of popular songs for use by cheerleading groups, teams, and organizations.

4. Upon information and belief, defendant Thomas Locklayer ("Locklayer") is an individual residing in Williamstown, New Jersey, and is the principal and owner of Extreme TRAXX. Upon information and belief, Locklayer personally instigated, directed, and controlled the unlawful activity alleged herein.

5. Upon information and belief, defendant Cheer Music Store Inc. ("Cheer Music Store") is a corporation with its principal place of business in Harrisburg, Pennsylvania, and is affiliated with defendants Cheer Music Machine, LLC and Cheerleading Music Service, LLC (collectively, the "Cheer Music Defendants"). Cheer Music Store has operated and

conducted business through its interactive website, http://www.cheermusicstore.com, and has engaged in streaming, offering for sale, distributing, and selling samples and remixes of popular songs for use by cheerleading groups, teams, and organizations.

6. Upon information and belief, defendant Cheer Music Machine, LLC ("Cheer Music Machine") is a Delaware limited liability company with its principal place of business in Harrisburg, Pennsylvania, and is affiliated with the Cheer Music Defendants. Cheer Music Machine has operated and conducted business through its interactive website http://www.cheermusicmachine.com, and has engaged in streaming, offering for sale, distributing, and selling samples and remixes of popular songs for use by cheerleading groups, teams, and organizations.

7. Upon information and belief, defendant Cheerleading Music Service, LLC ("Cheerleading Music") is a Delaware limited liability company with its principal place of business in Harrisburg, Pennsylvania, and is affiliated with the Cheer Music Defendants. Cheerleading Music has operated and conducted business through its interactive website http://www.cheerleadingmusic.com, and has engaged in streaming, offering for sale, distributing, and selling samples and remixes of popular songs for use by cheerleading groups, teams, and organizations.

8. Upon information and belief, defendant Mark Bryan ("Bryan") is an individual residing in Harrisburg, Pennsylvania, who is the owner and principal of the Cheer Music Defendants. Upon information and belief, Bryan personally instigated, directed, and controlled the unlawful activity alleged herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action for copyright infringement pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (action arising under an Act of Congress relating to copyright).

10. Upon information and belief, each of the Defendants engages in substantial and continuous solicitation of business in New York. New York is home to a vibrant community of cheerleading organizations and is a location for numerous cheerleading competitions. For example, the United States Cheer and Dance Directory lists sixty-one cheer, dance and gymnastics teams, six collegiate teams, and four professional teams located in New York State. *See* http://www.uscdd.net/nyteams.php (last visited February 5, 2014). The same website reports that, as of February 5, 2014, there are expected to be approximately 120 cheerleading competitions held in New York State between January 2014 and August 2014. As such, Defendants direct their business towards New York in order to profit from the large cheerleading market in this State and its appetite for cheerleading-specific music products.

11. Upon information and belief, Defendants sell their products primarily through their interactive websites. These sites go beyond merely displaying information, and allow New York customers to communicate with and make purchases from Defendants through the Internet. For example, Extreme TRAXX's website allows customers to email Extreme TRAXX, book appointments with its employees or representatives, and purchase or make "deposits" for Extreme TRAXX's products. The Cheer Music Defendants' websites allow customers to email representatives to discuss the customization of their music request and order or purchase products and services online.

4

12. Upon information and belief, a substantial percentage of Defendants' revenue is attributable to its sales to New York residents. As a large market for cheerleading music, New York customers are likely to be the source of a significant number of Defendants' yearly transactions.

13. As a result of Defendants' activities, they are subject to personal jurisdiction pursuant to CPLR § 301, and the exercise of the Court's general jurisdiction comports with constitutional due process.

14. Upon information and belief, Defendants have transacted business in the State of New York by selling music samples, remixes, CDs, and/or DVDs through their websites to various individuals or cheerleading groups located in New York. New York cheerleading organizations and residents provide a substantial market for Defendants' infringing businesses.

15. Sony Music's claim for copyright infringement arises from these transactions of business, inasmuch as the goods and services sold by Defendants to customers in New York infringe on Sony Music's copyrights.

16. Accordingly, Defendants are subject to personal jurisdiction in the State of New York pursuant to CPLR § 302(a)(1), and the exercise of such jurisdiction complies with constitutional due process.

17. Defendants have committed tortious acts outside of New York by creating and maintaining websites based in New Jersey and Pennsylvania that play and/or sell music samples, remixes, CDs, and/or DVDs that infringe on Sony Music's copyrights.

18. Sony Music's infringement claim arises from Defendants' acts, which have caused injury to Sony Music in New York.

19. Defendants expected or should reasonably have expected their tortious conduct to have consequences in New York, as it is well known that Sony Music's headquarters are located in New York City, New York hosts a substantial number of cheerleading competitions each year, and New York is home to a significant number of cheerleading teams, groups, and organizations.

20. Upon information and belief, Defendants have derived substantial revenue from interstate commerce through the use of their interactive websites by selling their products in New York and numerous other states.

21. As a result, Defendants are subject to personal jurisdiction in the State of New York pursuant to CPLR § 302(a)(3)(ii), and the exercise of such jurisdiction complies with constitutional due process.

22. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(b). Defendants are subject to the court's personal jurisdiction with respect to this litigation and therefore may be found in this judicial district. In addition, Sony Music has its principal place of business in the Southern District of New York, a substantial part of the events and omissions giving rise to Sony Music's injuries have occurred in New York, and a substantial part of the property at issue in this action, Sony Music's copyrights, are located in this district.

## FACTUAL ALLEGATIONS

**A.    Sony Music's Rights in the Sound Recordings at Issue**

23. Sony Music is one of the largest and most respected record companies in the music business. Its roster of artists includes a broad array of popular musicians and their songs, including such international superstars as Adele, Beyoncé, Britney Spears, Miley Cyrus, One Direction, P!nk, and Bruce Springsteen. The company boasts a vast catalog that comprises

some of the most important recordings in history. It is home to premier record labels representing music from every genre.

24. Sony Music owns or is the exclusive licensee of rights to the sound recordings of its artists. Sony Music has invested and continues to invest significant money, time, effort, and creative talent to create, promote, sell, and license its sound recordings.

25. Sony Music sells, distributes, and/or licenses its sound recordings in the form of CDs, DVDs, and digital files throughout the United States and in New York.

**B.  Defendants' Unlawful Copying and Distribution
of Sony Music's Sound Recordings**

26. Each Defendant has copied, distributed, and sold sound recordings owned and/or controlled by Sony Music without Sony Music's authorization.

**1.  Extreme TRAXX and Locklayer**

27. Extreme TRAXX and Locklayer are in the business of advertising, offering for sale and distribution, distributing, and selling customized mixes and/or samples of sound recordings to individuals or cheerleading groups for use in cheerleading competitions, exhibitions, and/or training. Extreme TRAXX's website proclaims that Extreme TRAXX is "'THE' house hold[sic] name synonymous with coaches, cheerleaders and choreographers alike when they speak of 'The Best Custom Music' in the industry."

28. Extreme TRAXX and Locklayer have sold and distributed their custom "mixes" or "packages" of sound recordings through, at the very least, their website. These products (the "Extreme TRAXX Products") have been priced between $850.00 (Traditional High School – 1 minute and 30 seconds) and $1,500.00 (Traditional Allstars) per package.

29. Although Sony Music does not know the complete extent of Extreme TRAXX's and Locklayer's unauthorized use of its sound recordings, a review of their website

7

has revealed that they have offered for sale and/or distribution sound recordings by Sony Music artists such as Christina Aguilera, Beyoncé, Chris Brown, Kelly Clarkson, Karmin, P!nk, and The Script, among others.

30. Sound recordings copied and sold by Extreme TRAXX Products include, but are not limited to "Army of Me" (Christina Aguilera), "Look at Me Now" (Chris Brown), "Emotions" (Mariah Carey), "Catch My Breath" (Kelly Clarkson), "Bug-A-Boo" (Destiny's Child), "To Love You More" (Celine Dion), "I Believe" (Fantasia), "Hello" (Karmin), "Runnin" (Adam Lambert), "Keep Holding On" (Avril Lavigne), "Swagger Jagger" (Cher Lloyd), "Dance Again" (Jennifer Lopez), "Blow Me (One Last Kiss)" (P!nk), and "Hall of Fame" (The Script).

31. The copyrights to all of the sound recordings specified in paragraph 30 above are registered in the Copyright Office of the United States, and are owned by, controlled by, and/or exclusively licensed to Sony Music.

32. Upon information and belief, Extreme TRAXX and Locklayer provided the Extreme TRAXX Products to customers in a digital and/or physical format that can be readily distributed to additional users – without Sony Music's authorization – by sharing the Extreme TRAXX Products digitally or burning them to a CD.

33. Upon information and belief, Extreme TRAXX and Locklayer have also allowed their website visitors to listen to certain Extreme TRAXX Products prior to making a purchase (*i.e.* they offer on-demand streaming).  Upon information and belief, Extreme TRAXX and Locklayer stream additional Extreme TRAXX Products through their Soundcloud page (https://www.soundcloud.com/extremetraxxproductions).

34. Extreme TRAXX and Locklayer have no license or other authorization from Sony Music to copy, sell, or distribute its sound recordings, and they have not compensated Sony Music for their unauthorized uses.

**2.    The Cheer Music Defendants and Bryan**

35. Like Extreme TRAXX and Locklayer, the Cheer Music Defendants and Bryan have used their websites to advertise, offer for sale and distribution, distribute, and sell premade and customized mixes and/or samples of sound recordings (the "Cheer Music Track Packs") to individuals or cheerleading groups for use in cheerleading competitions, exhibitions, and/or training.

36. Although the Cheer Music Defendants' websites no longer provide pricing information for premade and customized Cheer Music Track Packs, until approximately November 2013, the Cheer Music Defendants and Bryan charged customers between $75 (for 30 seconds, and up to "4 library songs") and $249 (for two minutes and 30 seconds, and "up to 20 library songs") for customized mixes.

37. Although Sony Music does not know the complete extent of the Cheer Music Defendants' and Bryan's unauthorized use of its sound recordings, a review of their websites has shown that they have offered for sale and/or distribution at least forty-seven sound recordings by P!nk and over twenty sound recordings by Adele. These sound recordings include, but are not limited to, "Bad Influence" (P!nk), "Blow Me (One Last Kiss)" (P!nk), "Cuz I Can" (P!nk), "Rolling in the Deep" (Adele), "Rumor Has It" (Adele), and "Set Fire to the Rain" (Adele).

38. The copyrights to all of the sound recordings specified in paragraph 37 above are registered in the Copyright Office of the United States, and are owned by, controlled by, and/or exclusively licensed to Sony Music.

39.   Upon information and belief, the Cheer Music Defendants and Bryan provided the premade and customized Cheer Music Track Packs to customers in a digital format that can be readily distributed to additional users by sharing the Cheer Music Track Packs digitally or burning them to a CD.

40.   The Cheer Music Defendants and Bryan also offered their website users the opportunity to listen to premade Cheer Music Track Packs before making a purchase on an on-demand, streaming basis. These Cheer Music Track Packs incorporated unauthorized uses of Sony Music sound recordings.

41.   The Cheer Music Defendants and Bryan also gave customers the option to "design your routine" prior to purchase by using the "Cheer Music Machine" tool at https://www.cheermusicmachine.com. This webpage allowed visitors to listen to and select sound recordings for inclusion in a customized Cheer Music Track Pack, and has included copies of recordings by Sony Music artists such as Adele, Alicia Keys, Britney Spears, Ke$ha, One Direction, and P!nk.

42.   The Cheer Music Defendants and Bryan have no license or other authorization from Sony Music to copy, sell, or distribute its sound recordings, and they have not compensated Sony Music for their unauthorized uses.

C.   **Defendants' Disregard of Sony Music's Cease and Desist Letters**

43.   Sony Music's legal counsel sent a letter dated April 4, 2013, by certified mail and e-mail, to Bryan as principal of the Cheer Music Defendants. Sony Music's letter notified the Cheer Music Defendants and Bryan that their custom mixes infringe Sony Music's copyrights, demanded that the infringing activity stop, and insisted that the Cheer Music Defendants and Bryan compensate Sony Music for their violation of its rights.

44. Bryan and the Cheer Music Defendants did not respond to the letter, but at some point thereafter, Bryan and the Cheer Music Defendants made changes to their websites to make certain content inaccessible without a password, which precludes any ability of Sony Music to determine current content.

45. In or about October 2013, Sony Music's outside counsel contacted Bryan and the Cheer Music Defendants, by phone and by email, and reiterated Sony Music's demands that they halt their infringement and compensate Sony Music for their use of its copyrighted sound recordings. Some initial conversations with Bryan and a lawyer who was considering representing him did not ultimately lead to an agreement or compliance with Sony Music's demands.

46. Sony Music's legal counsel sent a letter dated April 12, 2013, by certified mail and by e-mail, to Locklayer as the principal of Extreme TRAXX. Sony Music's letter to Locklayer and Extreme TRAXX similarly notified them that their products infringe Sony Music's copyrights, demanded Locklayer and Extreme TRAXX cease their activities, and sought payment for their infringing use of Sony Music's sound recordings. Locklayer and Extreme TRAXX did not respond to the letter.

47. Despite being explicitly notified of their infringement of Sony Music's rights, Defendants have not complied with the demand that they cease their infringement.

### Claim for Relief for Copyright Infringement

48. Plaintiff Sony Music hereby incorporates by reference the facts and allegations set forth in paragraphs 1 through 47 above, as if fully set forth herein.

49. Defendants have infringed Sony Music's copyrights by copying, selling, and/or distributing Sony Music's sound recordings in violation of 17 U.S.C. §§ 106 and 501 and, to the extent that any sound recordings at issue were fixed before February 15, 1972, the common law of various states including New York.

50. Defendants' infringement of Sony Music's rights in and to its sound recordings includes but is not limited to the representative list of sound recordings described above.

51. Defendants' acts of infringement have been deliberate and willful.

52. Defendants have unlawfully profited from the infringement of Sony Music's copyrights.

53. As a direct and proximate result of Defendants' violation of Sony Music's copyrights, Sony Music has suffered actual damages to an extent not yet known and to be determined by the trier of fact.

54. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Sony Music great and irreparable injury that cannot be fully compensated or measured in money damages. Sony Music has no adequate remedy at law.

WHEREFORE, Sony Music respectfully requests that this Court enter judgment against Defendants as follows:

A. Pursuant to 17 U.S.C. § 502 and Rule 65 of the Federal Rules of Civil Procedure, preliminarily and permanently enjoining Defendants and their officers, agents, servants,

employees, successors, licensees, assigns, and attorneys and any other persons who are in active concert or participation with them from reproducing, copying, distributing, or selling without Sony Music's authorization sound recordings for which Sony Music owns or controls the exclusive copyrights.

  B. Pursuant to 17 U.S.C. § 503, ordering that Defendants deliver to the Court for impoundment and ultimate destruction all copies or phonorecords or visual recordings (in physical and digital formats) made in violation of Sony Music's exclusive rights and all masters, tapes, or other means by which such copies or phonorecords or visual recordings may be reproduced.

  C. Pursuant to 17 U.S.C. § 504, awarding Sony Music its actual damages suffered as a result of Defendants' infringement of its copyrights, and any profits of Defendants attributable to the infringement and not taken into account in computing Sony Music's actual damages, or in the alternative, statutory damages of up to $150,000 per infringement for willful infringement;

  D. Pursuant to 17 U.S.C. § 505, awarding Sony Music its full costs, including a reasonable attorney's fee;

  E. Awarding Sony Music prejudgment interest according to law; and

  F. Awarding Sony Music such other and further relief as may be just and equitable under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues so triable.

Dated: February 10, 2014

Respectfully submitted,

*[signature]*

Kim J. Landsman
Ana-Claudia Roderick
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022-7020
(212) 907-7300
E-mail: klandsman@golenbock.com

*Attorneys for Plaintiff*
*Sony Music Entertainment*

1865458